**Samuel G. ALLEN, Plaintiff,**

v.

**James F. WRIGHTSON, Defendant.**

**Civ. A. No. 91–3804(JEI).**

United States District Court,
D. New Jersey.

Oct. 1, 1992.

---

Samuel G. Allen, pro se.

Robert J. Del Tufo, Atty. Gen., Trenton, N.J., for defendant.

## OPINION

IRENAS, District Judge.

This matter comes before the Court on cross motions for summary judgment. In this action under 42 U.S.C. § 1983 plaintiff seeks damages for an alleged violation of his Fourth Amendment rights when defendant forcibly entered plaintiff's home to arrest him. Because his arrest in New Jersey was 1) authorized by the Uniform Criminal Extradition Act, N.J.S.A. 2A:160–6 to 35 (the "Extradition Act") and 2) based on a probable cause finding by a New York Supreme Court Judge who issued a New York bench warrant for plaintiff's arrest, defendant's conduct did not infringe plaintiff's Fourth Amendment rights. Defendant's motion is granted.

## I. BACKGROUND

The plaintiff, Samuel G. Allen, was initially arrested at his home in Merchantville, N.J. on January 15, 1987 by defendant, James F. Wrightson, a State Investigator with the New Jersey Department of Law and Public Safety, Division of Criminal Justice. Plaintiff was thereafter convicted in New York for "failure to file taxes" and sentenced to probation. On June 19, 1989, a judge of the New York Supreme Court issued a bench warrant for plaintiff's arrest based on his violation of probation.[1]

Defendant received a copy of the New York bench warrant and a letter requesting plaintiff's arrest in New Jersey for extradition to New York from the New York Attorney General's Office. Defendant also received notice of the warrant through a routine NCIC (National Crime Information Center) check.

On August 30, 1989, defendant and another State Investigator, William Saunders, established surveillance of Allen's home at

---

**1.** Defendant's Exhibit C, New York Supreme Court Bench Warrant, No. 9132–86, (June 19, 1989).

6903 Harvey Avenue in Merchantville, N.J. to make the arrest. The officers saw plaintiff in the house, and Officer Wrightson recognized Allen because he had arrested him before in 1987. When Allen saw the officers he closed and locked the door.

Officer Saunders subsequently spoke with a Ms. Mary Jane Stevens, Allen's landlord. The officer identified himself, explained the purpose of their visit and offered to show Ms. Stevens the bench warrant for Allen's arrest.[2] The officers then called for and received assistance from the Pennsauken Police Department.

The officers made numerous efforts to contact Allen by knocking on the door and calling by telephone. When all efforts were ignored, the officers forced open the front door. They found Allen hiding beneath a bed in an upstairs bed room and arrested him. The area to which Mr. Allen had access was searched, and the officers found a loaded .32 caliber revolver, holster and military knife.[3]

## II. DISCUSSION

### A. *Summary Judgment Standard*

Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

There are no material facts in dispute. Allen's complaint challenges the lawfulness of defendant's entry, specifically asserting that his arrest following a forcible entry constituted an unreasonable search[4] and

seizure in violation of the Fourth Amendment. He relies primarily upon *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) for the proposition that his arrest after a forcible entry without a New Jersey warrant violates his rights under the Fourth Amendment.[5]

### B. *Fourth Amendment Analysis*

In *Payton* the court held that forcible entry without an arrest warrant for the purpose of making a "routine felony arrest" violated the Fourth Amendment. *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388. However, the Court also explained that, "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.*

Nothing in *Payton* indicates whether such an arrest warrant must be issued by a judicial officer of the jurisdiction in which the arrest is made. The question raised in this case is whether the probable cause determination made by the New York Supreme Court which issued the bench warrant for Allen's arrest was sufficient for Fourth Amendment purposes to have justified defendant's entry of Allen's home to arrest him. In other words, in the context of an extradition case, does an arrest warrant properly issued in the demanding state, coupled with the provisions of the Extradition Act, create the limited authority necessary for non-consensual entry, or must a judicial officer of the asylum state also issue a warrant?

There is no doubt that plaintiff's arrest by New Jersey law enforcement officers without a New Jersey fugitive warrant was

---

**2.** Memorandum of Arrest, W.J. Saunders (August 31, 1989).

**3.** Plaintiff does not dispute the factual allegations surrounding his arrest as set forth in the Affidavit of James F. Wrightson.

**4.** Plaintiff does not argue that the search itself would have been illegal if the arrest were lawful. It is the constitutionality of the arrest which he attacks.

**5.** Implicit in plaintiff's argument is the assumption that his arrest was "warrantless," notwithstanding the New York warrant, presumably on the correct conclusion that an arrest warrant issued by a state judicial officer is a command directed only to the law enforcement officers of that state.

legal and proper under the Extradition Act.[6] The question in this case is analogous to that in *Commonwealth v. Green*, 525 Pa. 424, 581 A.2d 544 (1990) in which a Pennsylvania criminal defendant argued for the suppression of certain evidence because the New Jersey officers who arrested him violated his Fourth Amendment rights by failing to take him promptly before a judge or magistrate.

The Court there observed that the United States Supreme Court has held that the Fourth Amendment requires a "timely independent determination of probable cause as a prerequisite to pre-trial detention or custody." *Id.* 581 A.2d at 552. The appellant in that case did not contest that the Pennsylvania judge who issued the arrest warrant found probable cause. Emphasizing the importance of having the probable cause determination made by "someone independent of the police or prosecutor," the court explained that the Fourth Amendment requirement had already been met by the judge in the demanding state who issued the arrest warrant. *Id.*

Plaintiff's reliance upon *Payton* is misplaced. The Supreme Court's holding in *Payton* was clearly rooted in the same concerns as those discussed in *Commonwealth v. Green*, to interpose a magistrate's determination of probable cause between the policeman and citizen before allowing the citizen to be arrested in his own home over his objection to the officer's entry. *Payton*, 445 U.S. 573, at 602, 100 S.Ct. 1371, at 1388. The Fourth Amendment protection to which plaintiff was entitled was, in fact, provided by the probable cause determination made by the New York Supreme Court judge who issued the bench warrant for his arrest.

■ Whether the probable cause determination made prior to plaintiff's arrest was made by a judicial officer in New York or New Jersey is immaterial for Fourth Amendment purposes. *See Ierardi v. Gunter*, 528 F.2d 929, 931 (1st Cir.1976)

(explaining that nothing prevents the demanding state from providing the requisite pre-rendition determination of probable cause, citing *Gerstein v. Pugh*, 420 U.S. 103, 116 n. 18, 95 S.Ct. 854, 864 n. 18, 43 L.Ed.2d 54 (1975)).

■ Once that determination is properly made by a competent court, it is beyond question that duplicative proceedings in the asylum state are unnecessary. The First Circuit has explained,

> Such a determination is fully consistent with reliance by the asylum state on the regularity of the demanding state's procedures. If, for example, the papers submitted by Florida were to show that a judicial officer or tribunal there had found probable cause, Massachusetts would not need to find probable cause anew, nor would it need to review the adequacy of the Florida determination.

*Ierardi*, 528 F.2d at 931. Indeed a New Jersey court would not even have had authority to review the New York court's determination. The Supreme Court has explained,

> Under Art. IV., § 2, the courts of the asylum state are bound to accept the demanding state's judicial determination since the proceedings of the demanding state are clothed with the traditional presumption of regularity. In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are *without power to review the determination.*

*Michigan v. Doran*, 439 U.S. 282, 290, 99 S.Ct. 530, 536, 58 L.Ed.2d 521 (1978) (emphasis supplied).

Moreover, plaintiff cites no authority for the proposition that the independent probable cause finding needed to justify a nonconsensual entry must be made by a judge or magistrate in the state in which the arrest is made, and this Court is aware of none. In the absence of such authority,

**6.** N.J.S.A. 2A:160–22 provides, "The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant, upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding 1 year ..."

this Court is unwilling to expand the Supreme Court's holding in *Payton*.

■ Although this case raises no questions directly under the Extradition Clause of the Constitution, U.S. Const. art. IV, § 2, cl. 2,[7] the reading of *Payton* sought by plaintiff is inconsistent with the constitutional mandate that extradition be a summary and mandatory executive proceeding which de-emphasizes state lines and facilitates unity among the states. *Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 534, 58 L.Ed.2d 521 (1978).

### C. *Qualified Immunity*

■ Government officials performing discretionary functions are protected from civil damages liability by qualified immunity so long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

This Court cannot say that a reasonable officer would have had any reason to believe that a forced entry to arrest plaintiff was a Fourth Amendment violation. Where a person has been charged with a crime in another state, New Jersey law expressly authorizes arrest without a New Jersey warrant. N.J.S.A. 2A:160–22. And the Supreme Court's opinion in *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388, explained that law enforcement officers would not violate the Fourth Amendment by making a forcible entry to arrest a suspect or fugitive when a warrant had been issued.

Qualified immunity protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Even if this Court were inclined to interpret *Payton* to require arrest warrants to be issued by officers of the state in which the arrest is ultimately made, defendant's qualified immunity would still entitle him to summary judgment.

---

7. Following his arrest plaintiff was extradited to New York. However, his complaint does not challenge the lawfulness of that action.