277 N.J. Super. 113 (1994)
649 A.2d 89
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEO R. JONES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 4, 1994.
Decided November 14, 1994.
*115 Before Judges BRODY, LONG and LEVY.
Susan L. Reisner, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, of counsel and on the brief).
John J. Fahy, Bergen County Prosecutor, attorney for respondent (John J. Scaliti, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by LONG, J.A.D.
Bergen County Indictment No. S-0603-90 charged defendant, Leo R. Jones, with first degree robbery, contrary to N.J.S.A. 2C:15-1 (count one); burglary, contrary to N.J.S.A. 2C:18-2 (count two); possession of heroin, contrary to N.J.S.A. 2C:35-10a(1) (count three); and receiving stolen property, contrary to N.J.S.A. 2C:20-7 (count six).[1]
Prior to trial, defendant moved to suppress the physical evidence obtained against him as a result of a search and seizure which took place on October 18, 1989. He also moved to suppress *116 the oral statements he gave to the police. The motions were denied.
The counts of the indictment regarding defendant were severed and he stood trial on the burglary charge. He was found guilty and sentenced to a four-year custodial term to run consecutively to the sentence he was then serving. An appropriate Violent Crimes Compensation Board penalty was also imposed.
Defendant contends that the following errors warrant reversal:
POINT I:
DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE STATE'S UNREASONABLE SEARCH AND SEIZURE VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS.
POINT II:
DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE DEFENDANT'S INCRIMINATING STATEMENT AND THE TESTIMONY THERETO WERE ERRONEOUSLY ADMITTED IN EVIDENCE, THEREBY DEPRIVING DEFENDANT OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS AGAINST SELF-INCRIMINATION.
POINT III:
DEFENDANT'S FOUR-YEAR PRESUMPTIVE TERM MUST BE VACATED BECAUSE THE MITIGATING FACTORS OUTWEIGHED THE AGGRAVATING FACTORS AND/OR THE SENTENCING COURT FAILED TO PROVIDE AN EXPLICIT STATEMENT ON THE RECORD AS TO HOW THE MITIGATING AND AGGRAVATING FACTORS WERE BALANCED.
Because we agree with defendant that the search and seizure which led to the arrest violated the constitution, we reverse the order denying suppression of evidence and the inculpatory statement which was obtained as a result of his arrest; we grant suppression and reverse defendant's conviction which was based primarily on inadmissible evidence. The facts established on the motion to suppress follow.
On October 15, 1989, Peter Katsihtis, a Hackensack resident, parked his Mazda MX6 in the parking lot of the Stony Hill Inn, which was across the street from his residence at 222 Ellen Terrace. He had permission to park there from the owner of the Stony Hill Inn, who was a relative. The following morning, Katsihtis found that the passenger's side window of his car was broken and that the car had been entered. Missing from the car *117 were Katsihtis's wallet, driver's license, registration, social security card, cassette tapes and car mats. Katsihtis reported the burglary to the Hackensack Police Department.
On October 18, 1989, Sergeants Michael Mordaga and Robert Wright of the Hackensack Police Department were conducting a surveillance near 370 Park Street, an apartment complex in Hackensack. The surveillance was on a matter unrelated to defendant. The police officers observed defendant and a Lonzie Collier drive into the parking lot close to where the officers were parked, and exit from their car. Mordaga, who was aware that an arrest warrant had been issued for Lonzie Collier but was unaware of the reason for the warrant,[2] exited the police vehicle and approached Collier and defendant. Collier and defendant immediately fled to the front of the building.
Mordaga and Wright chased the two fleeing men into the apartment building and up the stairs to the third floor where they observed the men enter apartment 312 at the end of the hall. The door was locked and Mordaga testified that he kicked it in. He further testified: "[I]mmediately upon entering the apartment to the right of the door was a kitchen table. There were several items on that table. There was assorted narcotic paraphernalia."
Mordaga also observed several documents on the kitchen table relating to Katsihtis, including a social security card, a driver's license, a check, a bank card and a vehicle registration. The police also spotted and seized a crowbar, which was wrapped in newspaper, on the floor near the base of the table. They arrested Collier and defendant and advised them of their Miranda rights. Collier and defendant were then transported to police headquarters.
Once at police headquarters, defendant stated a willingness to cooperate with the police. Mordaga testified that "[defendant] stated that he had information regarding Lonzie Collier and *118 himself committing several crimes to which he was the driver and he was willing to cooperate with the police at that time and cooperate with whatever detective was involved in those cases...." Mordaga readvised defendant of his Miranda rights but did not himself interrogate defendant or take his statement because the crime was not narcotics related and, therefore, a detective from General Investigation was needed to obtain any further information.
Shortly after 8:00 p.m. the following day, Mordaga approached a Detective Krakowski and asked him to look through the files and see what was available about a car burglary at the Stony Hill Inn. Krakowski located the file and at around 8:50 p.m. sat down with defendant, at which time defendant was again advised of his Miranda rights. Defendant subsequently signed a waiver form acknowledging his receipt and understanding of the Miranda rights. Krakowski then took a statement from defendant relating to the October 15 burglary at the Stony Hill Inn. Defendant related that he had been in a car with Lonzie Collier and that Collier had told him to pull over in the Stony Hill Inn's parking lot. Collier exited the defendant's vehicle and used a crowbar to break into the parked car. Defendant related that when Collier returned to defendant's vehicle, Collier had said that there was nothing of value in the parked car.
Defendant did not take the stand on his own behalf at trial, nor did he call any witnesses. The jury found him guilty of burglary.
The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A basic principle of Fourth Amendment law is that it is presumptively unreasonable to conduct a search and seizure inside a home without a warrant. State v. Henry, 133 N.J. 104, 110, 627 A.2d 125, cert. denied, ___ U.S. ___, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993) (quoting Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980)). The purpose of the *119 warrant requirement is to "safeguard[] citizens by placing the determination of probable cause in the hands of a neutral magistrate before an arrest or search is authorized." Ibid. If, as in the present case, there is no warrant, the State bears the burden of proving the overall reasonableness of the search. Ibid.
In making this determination, the proper inquiry is "whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent." State v. Bruzzese, 94 N.J. 210, 219, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The standard is a strict one and a warrantless search and seizure is considered per se illegal "subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); State v. Demeter, 124 N.J. 374, 379-380, 590 A.2d 1179 (1991).
The question presented here is whether the warrantless invasion and search of apartment 312 passes Fourth Amendment muster. The state argues that the search was within the scope of the exigent circumstances exception to the warrant requirement. The principle that exigent circumstances coupled with probable cause may excuse the police from compliance with the requirement of a warrant is well established. United States v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305 (1976) (the potential destruction of evidence); State v. Bruzzese, supra, 94 N.J. at 218, 463 A.2d 320; State v. Valencia, 93 N.J. 126, 136, 459 A.2d 1149 (1983) ("To sustain a warrantless search, the State must ordinarily demonstrate that exigent circumstances prevented obtaining a written warrant and that probable cause for the search existed.")
The State claims that the outstanding warrant against Collier, along with the flight of Collier and defendant into a known drug location, met the exigent circumstances exception. We disagree. In our view, this situation is governed by State v. Bolte, 115 N.J. 579, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. *120 330, 107 L.Ed.2d 320 (1989). There, the court addressed the question of whether a police officer in "hot pursuit" of a person suspected of a number of motor vehicle and disorderly persons offenses, committed in the officer's presence, could make a warrantless entry into the suspect's home to effectuate an arrest. The probable cause prong of the exception obviously was met in Bolte by the officer's observations. It was exigency which was the issue. In reaching its conclusion that such an entry is unconstitutional, the Supreme Court in Bolte relied on the decision in Welsh v. Wisconsin for the proposition that an arrest for a minor offense rarely, if ever, can support a finding of exigency sufficient to justify a warrantless home entry. Id., 115 N.J. at 590-91, 560 A.2d 644 (citing Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984)). While Welsh did not involve a question of hot pursuit, it did hold that the Fourth Amendment prohibited police from making a warrantless night entry into a home to arrest defendant for the violation of a "nonjailable" traffic offense. Welsh, supra, 466 U.S. at 754, 104 S.Ct. at 2093, 80 L.Ed.2d at 746. The Court in Welsh found it significant that the offense underlying the warrant was a minor one:
[B]efore agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.
[Id. at 750, 104 S.Ct. at 2098, 80 L.Ed.2d at 743. (citations omitted).]
Reasoning from Welsh, the Court in Bolte held:
The State's concession before the Appellate Division that Officer Liss lacked probable cause, when he entered the house, to believe that Bolte was driving while intoxicated requires us to view this case in the context of Welsh's holding that an arrest for a "minor offense" can rarely support a finding of exigent circumstances sufficient to justify a warrantless home entry. Absent probable cause to believe Bolte was intoxicated, the officer's pursuit could be justified by his observation that Bolte had probably committed a number of motor vehicle offenses, including reckless driving, speeding, failure to maintain a single lane, as well as eluding and resisting arrest. The last two violations are disorderly persons offenses and the others are motor vehicle infractions. We hold that these offenses, individually and *121 in the aggregate, are within the category of "minor" offenses held by the Welsh Court to be insufficient to establish exigent circumstances justifying a warrantless home entry.
Nor does the fact that Officer Liss was in "hot pursuit" of defendant remove this case from the ambit of Welsh. We reject the State's contention that hot pursuit alone can support a warrantless entry into a home.
....
Although the facts in this record do not demonstrate that there was a serious threat to public safety in the course of Officer Liss' pursuit of defendant, we do not regard Welsh as precluding application of the "exigent circumstances" exception in such a factual context. Obviously, less intrusive measures should be used whenever possible including, as the Appellate Division suggested, an attempt at a consensual entry or a telephonic warrant. If such measures fail, and if the threat to public safety is substantial, the "hot pursuit" of a defendant who poses a threat to public safety may in certain contexts constitute an exigent circumstance sufficient to support a warrantless home entry under current United States Supreme Court decisions.
[Bolte, supra, 115 N.J. at 597-98, 560 A.2d 644 (citations omitted).]
The State argues that the warrant for Collier's arrest justified the pursuit of the fleeing defendant and Collier, as well as the entry into apartment 312, and serves to distinguish this case from Bolte. We disagree. If arrest for numerous motor vehicle and disorderly persons violations committed in the officer's presence does not justify invading the sanctity of a private home, it follows that execution of an arrest warrant issued for similar minor offenses would not validate such an invasion.
Here, the officers sought to effectuate an arrest warrant by breaking into a private home without the slightest idea whether the warrant was for murder or for the payment of a fine (the latter ultimately proving correct). Not knowing the nature of the warrant, in our view, places the pursuing officer in the same situation as in Bolte. The presumption must be that the warrant is for a minor offense in the absence of evidence to the contrary. To reach any other conclusion would be to allow the police to circumvent the constitutional sensitivity toward the sanctity of private dwellings by simply choosing not to ascertain the nature of an outstanding warrant. Requiring that the police make such an inquiry prior to invading a private home is an essential safeguard.
*122 We note that we are not faced here with a case involving a perceived threat to public safety which Bolte recognized might "in certain contexts constitute an exigent circumstance sufficient to support a warrantless home entry under current United States Supreme Court decisions." Bolte, supra, 115 N.J. at 598, 560 A.2d 644. Nor is there any suggestion in this record that the police had reason to believe that the invasion was necessary to prevent the destruction of evidence. State v. Fair, 45 N.J. 77, 86, 211 A.2d 359 (1965).
In sum, the physical evidence obtained at the apartment should have been suppressed. Because what was uncovered during the interdicted break-in of apartment 312 was the sole basis for defendant's arrest for burglary, his subsequent inculpatory statements should also have been suppressed as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453-54 (1963). It follows that defendant's conviction for burglary must be reversed because most, if not all, of the evidence against him was inadmissible.
Reversed and remanded.
NOTES
[1] The indictment also charged Lonzie Collier with first degree armed robbery (count one), burglary (counts two and four), possession of heroin (count three), and theft (count five). In addition, the indictment charged Dwight Medley with possession of heroin (count three).
[2] The arrest warrant was issued for Collier's failure to pay fines assessed for prior convictions.