— A.2d —

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. LEO R. JONES, DEFENDANT–RESPONDENT.

Argued October 10, 1995—Decided December 13, 1995.

*John J. Scaliti,* Acting Assistant Prosecutor, argued the cause for appellant (*Charles R. Buckley,* Acting Bergen County Prosecutor, attorney).

*Steven M. Gilson,* Designated Counsel, argued the cause for respondent (*Susan Reisner,* Public Defender, attorney).

*Nancy Peremes Barton,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, the issue is whether it was reasonable, under the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution, for a police officer, following the fleeing subject of an outstanding arrest warrant, to enter a private residence using force if the officer did not know the offense underlying the warrant.

I

On the evening of October 15, 1989, Peter Katsihtis parked his Mazda MX6 in the parking lot of the Stony Hill Inn, which was located across the street from his residence. Katsihtis had been given permission to park there. The next morning, Katsihtis

found that the car had been broken into and that his wallet, driver's license, registration, social security card, cassette tapes, and floor mats had been stolen. He reported the theft to the Hackensack Police.

Two days later, on October 18, 1989, Sergeants Michael Mordaga and Robert Wright of the Hackensack Police Department's Narcotics Street Crime Unit were conducting a surveillance near an apartment complex located at 370 Park Street. The police surveillance was unrelated to defendant. During the surveillance, the officers observed a vehicle containing defendant and a companion, Lonzie Collier, pull into the parking lot. Mordaga recognized Collier from previous encounters and also remembered having seen an outstanding warrant for his arrest earlier that evening. At that time, Mordaga did not know the offenses underlying the issuance of the warrant. Subsequently, he learned that the warrant was issued for Collier's failure to pay fines assessed for two prior convictions of possession of narcotics paraphernalia.

On seeing Collier, the police officers exited their vehicle and approached Collier and defendant. The defendant and Collier fled. The record is unclear about whether the officers informed Collier that they had a warrant for his arrest before the men ran away. At the pretrial suppression hearing, it appeared that Collier and defendant fled before the officers had an opportunity to inform Collier that they had a warrant for his arrest. Alternatively, Collier and defendant may have been too far away to have heard the officers. At trial, however, Mordaga testified on cross-examination that he "attempted to get [Collier's] attention by calling him. I said, 'Toot' which is his nickname, 'Toot', we have a warrant for your arrest. He turned. At the same time he saw us approaching and he ran." Indeed, in defendant's brief to the Appellate Division, he confirmed that Mordaga made that statement. However, in his brief to this Court, defendant asserted that the two men had run before Mordaga told them he had a warrant for Collier's arrest.

Both Collier and defendant knew that Mordaga and Wright were police officers. It is also undisputed that both Collier and defendant fled either on seeing the officers or on being informed that the police had a warrant for Collier's arrest. Mordaga and Wright gave chase. Defendant and Collier entered the apartment building with the two police officers not far behind. Collier and defendant ran up the stairs and quickly entered apartment 312. Mordaga and Wright followed them.

The facts establish that the police tried the door, found it locked, and kicked it down. The record is unclear as to whether the officers knocked and announced their presence at the apartment before breaking down the door. At the suppression hearing, the officers were not questioned on whether they had knocked and announced their presence. However, at trial Mordaga testified on cross-examination that he knocked and asked for entrance before kicking in the door.

Mordaga testified that immediately inside the door was a kitchen table, upon which were strewn various narcotics paraphernalia and paper documents, all of which the officers seized. The papers included Peter Katsihtis's driver's license, social security card, bank card, and vehicle registration. The officers also observed and seized a crowbar, which was wrapped in newspaper. The police arrested Collier and defendant, read them their *Miranda* rights, and then took them to the police station.

On his arrival at police headquarters, defendant expressed a willingness to cooperate with the police. Defendant implicated himself and Collier in several crimes in which defendant had been the driver of the get-away car. Mordaga re-informed defendant of his *Miranda* rights, but he did not interrogate defendant because the crimes were not narcotics related. The next morning Detective Krakowski of General Investigations was summoned to follow-up with defendant. After informing defendant of his *Miranda* rights, which defendant waived in a signed release, Krakowski took a statement from defendant relating to the robbery of a car at the Stony Hill Inn on October 15. Defendant told the police

officer that he had been driving with Collier when Collier instructed him to pull into the parking lot at the Stony Hill Inn. Collier got out of defendant's car and went over to a Mazda MX6 parked in the lot. After Collier tried unsuccessfully to pry open the trunk, he broke the passenger's side window instead. Defendant told police that Collier said there was nothing of value in the vehicle.

## II

Defendant was indicted on charges of first degree robbery, contrary to *N.J.S.A.* 2C:15–1 (count one); burglary, contrary to *N.J.S.A.* 2C:18–2 (count two); possession of heroin, contrary to *N.J.S.A.* 2C:35–10a(1) (count three); and receiving stolen property, contrary to *N.J.S.A.* 2C:20–7 (count six). The other counts in the indictment related to Lonzie Collier and another co-defendant. Prior to trial, defendant moved to suppress the physical evidence seized from the apartment and the oral statement that he later gave to the police. He also moved to have the counts severed for trial.

The suppression hearing lasted five days. Defendant's primary argument was that the warrant on which co-defendant Collier was arrested did not exist and that it was fabricated after the entry of the apartment and the arrest. In that connection, defense counsel brought out several inconsistencies and mistakes in police and municipal court procedures with respect to the issuance of the warrant. While impressed with counsel's attempt to disprove the validity of the arrest warrant, the trial court stated, "I also recognize and take into consideration all the reasons why these things might have been suspect, but I can't disbelieve the clerk's testimony that she signed it [the warrant] on the 18th absent any proof to the contrary." Ultimately, the trial court concluded that "the entry into the premises was lawful and they could seize, pursuant to that warrant, any contraband that they observed on the kitchen table and they did that." Accordingly, the trial court denied the motion to suppress and admitted the items seized from

the apartment and the statements made by defendant after he was taken into custody. The trial court, however, granted defendant's motion to sever various counts of the indictment.

Defendant stood trial only on count two, the Katsihtis burglary charge. The defendant did not testify on his own behalf, nor did he call any witnesses. The jury found him guilty. Defendant appealed to the Appellate Division, and the panel reversed and remanded. 277 *N.J.Super.* 113, 122, 649 *A.2d* 89 (1994). The panel concluded that the physical evidence obtained at the apartment and the defendant's subsequent inculpatory statements should have been suppressed. *Ibid.*

The Appellate Division observed that the case was governed by *State v. Bolte,* 115 *N.J.* 579, 560 *A.2d* 644 *cert. denied,* 493 *U.S.* 936, 110 *S.Ct.* 330, 107 *L.Ed.2d* 320 (1989). *Jones, supra,* 277 *N.J.Super.* at 119–20, 649 *A.2d* 89. In *Bolte,* this Court held that it was unreasonable for a police officer, in "hot pursuit" of a person suspected of numerous motor vehicle and disorderly persons offenses, to make a warrantless entry into a suspect's home to effect an arrest. *Bolte, supra,* 115 *N.J.* at 580–81, 560 *A.2d* 644. Although the officer in *Bolte* was in "hot pursuit," this Court found lacking the exigent circumstances needed to validate the warrantless entry of the individual's home. *Id.* at 597–98, 560 *A.2d* 644.

Although acknowledging that the officers were attempting to execute the outstanding arrest warrant on Collier when Collier and defendant fled into the apartment, the Appellate Division, relying on *Bolte, supra,* stated that "[i]f arrest for numerous motor vehicle and disorderly persons violations committed in the officer's presence does not justify invading the sanctity of a private home, it follows that execution of an arrest warrant issued for similar minor offenses would invalidate such an invasion." *Jones, supra,* 277 *N.J.Super.* at 121, 649 *A.2d* 89. The panel also noted that the police officers did not know the basis for the outstanding warrant at the time they tried to execute it:

Not knowing the nature of the warrant, in our view, places the pursuing officer in the same situation as in *Bolte.* The presumption must be that the warrant is for a

> minor offense in the absence of evidence to the contrary. To reach any other conclusion would be to allow the police to circumvent the constitutional sensitivity toward the sanctity of private dwellings by simply choosing not to ascertain the nature of an outstanding warrant. Requiring that the police make such an inquiry prior to invading a private home is an essential safeguard.
>
> [*Ibid.*]

The Appellate Division concluded that the officers impermissibly broke into apartment 312 and that the evidence seized therein was the result of an unreasonable search and seizure. Defendant's conviction was reversed.

We granted the State's petition for certification, 140 *N.J.* 276, 658 *A.*2d 300 (1995), and now reverse.

### III

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> [*U.S. Const.* amend. IV (emphasis added).]

New Jersey's constitution provides similarly. *See N.J. Const.* art. I, ¶ 7 (mirroring federal requirement).

 "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York,* 445 *U.S.* 573, 585, 100 *S.Ct.* 1371, 1379, 63 *L.Ed.*2d 639, 650 (1980) (quoting *United States v. United States District Court,* 407 *U.S.* 297, 313, 92 *S.Ct.* 2125, 2134–35, 32 *L.Ed.*2d 752, 764 (1972)). It is a "basic principle of Fourth Amendment law that searches and seizures inside a man's house without a warrant are per se unreasonable. . . ." *Coolidge v. New Hampshire,* 403 *U.S.* 443, 477–78, 91 *S.Ct.* 2022, 2044, 29 *L.Ed.*2d 564, 589–90 (1970); *see also State v. Henry,* 133 *N.J.* 104, 110, 627 *A.*2d 125 (1993), *cert. denied,* —— *U.S.* ——, 114 *S.Ct.* 486, 126 *L.Ed.*2d 436 (1994) (same) (quoting *Payton, supra,* 445 *U.S.* at 586, 100 *S.Ct.* at 1380, 63 *L.Ed.*2d at 651).

■ Courts have always emphasized the distinction between a warrantless search and a search pursuant to a warrant. The requirement that police obtain a warrant "safeguards citizens by placing the determination of probable cause in the hands of a neutral magistrate before an arrest or search is authorized." *Henry, supra,* 133 *N.J.* at 110, 627 *A.*2d 125. A police officer therefore with a valid arrest warrant "has the right to execute the warrant by arresting a defendant at his or her home." *State v. Bruzzese,* 94 *N.J.* 210, 228–29, 463 *A.*2d 320 (1983) *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984) (citation omitted). As the Supreme Court explained: "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton, supra,* 445 *U.S.* at 603, 100 *S.Ct.* at 1388, 63 *L.Ed.*2d at 661. Thus, the police have the right to execute an arrest warrant on a defendant at his or her home, and they may enter the home to search for the defendant when there is probable cause to believe that he or she is there.

## IV

Warrants are issued pursuant to *Rule* 3:3–1. The issuance of a warrant does more than simply place a duty on the police to execute it; its issuance suggests that the sought-after suspect may be wanted for a grave offense or that the suspect has ignored less intrusive process. Subsection (b) of *Rule* 3:3–1, in pertinent part, provides:

(b) Determination Whether to Issue a Summons or Warrant. A summons rather than an arrest warrant shall issue unless the judge, clerk or deputy clerk, municipal court administrator or deputy court administrator finds:

. . . .

(2) The defendant has failed to respond to a summons;

. . . .

(4) There is an outstanding arrest warrant for the defendant; [or]

. . . .

(6) The judge, clerk or deputy clerk, municipal court administrator or deputy court administrator has reason to believe that the defendant will not appear in response

to a summons. A summons rather than an arrest warrant shall issue if the defendant is a corporation.

[*R.* 3:3–1(b).]

In this case, a warrant, rather than a summons, was issued because co-defendant Collier had previously failed to respond to an earlier summons and because he had a prior arrest warrant outstanding against him. A neutral and detached magistrate made the determination that a warrant, rather than a simple summons, should issue for Collier's arrest. It was on the basis of that arrest warrant that the police officers in this case acted.

■ "Once a warrant is issued, or probable cause comes into existence, it becomes an officer's duty to arrest the suspect. . . ." *Smith v. Gonzales,* 670 *F.*2d 522, 527 (5th Cir.1982), *cert. denied,* 459 *U.S.* 1005, 103 *S.Ct.* 361, 74 *L.Ed.*2d 397 (1982). "Officers have no discretion in making arrests where there is an outstanding warrant." *Stone v. State,* 620 *So.*2d 200, 201 (Fla.Dist.Ct.App. 1993) (citing *McCray v. State,* 496 *So.*2d 919 (Fla.Dist.Ct.App. 1986)). In fact, had the officers failed to attempt to effectuate the warrant, they would have been derelict in their duties. *Rule* 3:3–3(b) states that "[t]he warrant may be executed and the summons served *at any place* within this State." (emphasis added).

■ Accordingly, under both statutory and decisional law, the officers had a right to effect the arrest of co-defendant Collier by entering the apartment. The officers were acting under a validly issued arrest warrant. Collier fled into an apartment building. The officers followed in hot pursuit. They observed defendant and Collier run into apartment 312. Whether Collier's fleeing made it impossible for him to hear Mordaga state that he had a warrant for his arrest makes no difference. A suspect named in a warrant who makes it impossible for the police to tell him that there is an outstanding arrest warrant should not benefit from the officer's inability to inform him of that warrant.

The Appellate Division failed to comprehend the distinction between the entry here pursuant to a warrant and the warrantless entries in *Bolte, supra,* and *Welsh v. Wisconsin,* 466 *U.S.* 740, 104

*S.Ct.* 2091, 80 *L.Ed.*2d 732 (1984). *Jones, supra,* 277 *N.J.Super.* at 120, 649 *A.*2d 89. In *Welsh, supra,* a witness observed the defendant commit several motor vehicle and disorderly persons offenses. 466 *U.S.* at 742, 104 *S.Ct.* at 2093–94, 80 *L.Ed.*2d at 738. Another passerby called the police and relayed the story. *Ibid.* Without securing a warrant, a police officer entered the defendant's home and arrested him. *Ibid.* The United States Supreme Court found that that warrantless entry was unreasonable, noting that "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, *and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.*" *Id.* at 750, 104 *S.Ct.* at 2098, 80 *L.Ed.*2d at 743 (footnote omitted) (emphasis added). In contrast, the officers in this case were making an in-home arrest, albeit for a minor offense, pursuant to a valid warrant issued upon probable cause by a neutral and detached magistrate.

The valid arrest warrant provided a "limited authority to enter a dwelling" in which Collier lived when there was reasonable grounds to believe he was there. *See Payton v. New York, supra,* 445 *U.S.* at 602–03, 100 *S.Ct.* at 1388–89, 63 *L.Ed.*2d at 660–61. Aware of the warrant for Collier's arrest, the officers had both the right and the duty to follow him into the apartment. *See United States v. Santana,* 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300 (1976) (approving entry of private home when warrantless arrest commenced outside and suspect fled into private home in effort to avoid arrest); *Allen v. Wrightson,* 800 *F.Supp.* 1235, 1238 (D.N.J. 1992) (finding that law enforcement officers properly forced entry of plaintiff's home to arrest on New York warrant for violation of probation); *Edwards v. United States,* 364 *A.*2d 1209 (D.C.App. 1976), *reh'g en banc,* 379 *A.*2d 976 (D.C.App.1977) (finding that police were not required to "shrug [their] shoulders and allow a crime to occur or a criminal to escape," when a suspect attempting to evade a valid investigatory stop fled into a private home) (citations omitted); *People v. Land,* 198 *A.D.*2d 438, 604 *N.Y.S.*2d 146 (App.Div.1993), *leave to appeal denied,* 82 *N.Y.*2d 926, 610

*N.Y.S.*2d 178, 632 *N.E.*2d 488 (1994) (holding that police properly followed defendant into home after initiating arrest on front stoop).

V

The Appellate Division's holding that police officers may not chase fleeing suspects into private residences unless armed with a warrant for a non-minor offense creates an unworkable and unreasonable standard. The panel's determination that "[t]he presumption must be that the warrant is for a minor offense in the absence of evidence to the contrary," *Jones, supra,* 277 *N.J.Super.* at 121, 649 *A.*2d 89, hamstrings police officers, encourages flight, and neglects the role of the magistrate.

Amicus curiae, the Attorney General of the State of New Jersey, and the Bergen County Prosecutor observe that because of the volume of outstanding warrants, police officers rarely know the underlying offense on which the arrest warrant is issued. Officers simply know that a warrant exists for a certain individual and that it is their duty to arrest that person when they see him or her. At trial, the Court was advised that over 1,000 warrants for contempt of court alone are issued by the Municipal Court of Hackensack each year. While law enforcement officers may reasonably be expected to remember that an arrest warrant was issued for a person to expect them to remember, for days and perhaps months, the underlying offense for numerous warrants is unreasonable.

Moreover, the distinction between minor offenses and serious offenses is impractical and would be difficult to enforce. It would necessitate a case-by-case evaluation of the seriousness of each crime. *Welsh v. Wisconsin, supra,* 466 *U.S.* at 761, 104 *S.Ct.* at 2103–04, 80 *L.Ed.*2d at 750–51 (White, J., dissenting). The officer would have to delay apprehension of the suspect to ascertain from headquarters the offense underlying the warrant. Then, the officer would have to assess in the field whether the offense is serious enough to justify home entry. The Appellate Division's

holding offers no guidance on what is a minor offense. As the Court noted in *Welsh, supra:*

[t]here may have been a time when the line between misdemeanors and felonies marked off those offenses involving a sufficiently serious threat to society to justify warrantless in-home arrests under exigent circumstances. But the category of misdemeanors today includes enough serious offenses to call into question the desirability of such line drawing. See ALI, Model Code of Pre–Arraignment Procedures 131–132 (Prelim Draft No. 1, 1965) (discussing ultimately rejected provision abandoning "in-presence" requirement for misdemeanor arrests).

[466 *U.S.* at 761, 104 *S.Ct.* at 2103, 80 *L.Ed.*2d at 750].

In view of the significance that attaches to the issuance of a warrant and the fact that "every arrest, regardless of the nature of the offense [may] present a risk of danger to an officer," *State v. Bruzzese, supra,* 94 *N.J.* at 233, 463 *A.*2d 320, to require police officers to distinguish between arrest warrants issued for minor and serious offenses would be unreasonable. Furthermore, to require that police know the offenses underlying every warrant, and then whether or not a given offense is a "minor" one, unjustifiably interferes with the execution of a principal and traditional police function, namely to arrest individuals wanted on outstanding warrants. As the United States Supreme Court has stated, "We would hesitate to declare a police practice of long standing 'unreasonable' if doing so would severely hamper effective law enforcement." *Tennessee v. Garner,* 471 *U.S.* 1, 19, 105 *S.Ct.* 1694, 1705, 85 *L.Ed.*2d 1, 14 (1985).

■ The magistrate has the duty and neutrality to determine whether a warrant or a summons should be issued. If the magistrate determines that a warrant should issue, his or her decision should not be second-guessed by the police officer. Law enforcement officers have a duty to enforce validly issued arrest warrants without distinction, whether they were issued for minor or serious offenses. As long as the officers acted reasonably in executing the warrant, as they did here, then the arrest and any evidence seized incident to the arrest should be admitted.

## VI

 If Mordaga did not knock and announce at the door, his failure to adhere strictly to the common-law "knock and announce" requirement is obviated by the United States Supreme Court's recent decision in *Wilson v. Arkansas,* 514 *U.S.* ——, 115 *S.Ct.* 1914, 131 *L.Ed.*2d 976 (1995). In that case, the defendant was arrested when the police, acting pursuant to valid search and arrest warrants, let themselves into her home through an open screen door. *Id.* at ——, 115 *S.Ct.* at 1915–16, 131 *L.Ed.*2d at 979. The police failed to knock and announce their purpose. *Ibid.* The Supreme Court reviewed the history and development of Fourth Amendment principles, tracing them back through the common-law to the seminal decision in *Semayne's Case,* 5 *Co.Rep.* 91a, 91b 77 *Eng.Rep.* 194, 195 (K.B.1603), which had its origins in an English statute enacted in 1275 (referring to 1 Edw., ch. 17, in 1 Statutes at Large from Magna Carta to Hen. 6 (O. Ruffhead ed. 1769)). *Ibid.* While not explicitly adopting any of the exceptions to the knock-and-announce requirement, such as the "useless gesture" exception, *see Ker v. California,* 374 *U.S.* 23, 83 *S.Ct.* 1623, 10 *L.Ed.*2d 726 (1963), the Court left it to the lower courts to determine "the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at ——, 115 *S.Ct.* at 1919, 131 *L.Ed.*2d at 984. The Court simply held "that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." *Ibid.* Consequently, the case was remanded to the Arkansas Supreme Court for a determination of the reasonableness of the unannounced entry. *Ibid.*

In the present case, the futility of requiring the officers to announce their presence and purpose prior to entry is obvious: the suspects knew the police were chasing them, and they fled into the private apartment to avoid arrest. *See, e.g., United States v. Rambo,* 789 *F.*2d 1289 (8th Cir.1986) (noting "knock and announce" was useless gesture where defendant slammed door on

known police officers). Furthermore, these officers knew that both defendant and Collier had been convicted previously of drug offenses. Evidence of drug use or drug distribution is easily destroyed.

## VII

Police officers acting pursuant to a valid arrest warrant have the right to follow a fleeing suspect into a private residence. To require the police officer to know the underlying offense for which the warrant was issued, and then determine whether or not that offense is a minor one, unjustifiably hampers law enforcement and vitiates the role of the issuing magistrate.

After this opinion, we do not expect that there will be a flood of police routinely entering residences by force to effectuate arrest warrants for minor matters. Our Court Rules dealing with the execution of a warrant now state that "[i]f the warrant is in possession of the officer at the time of the arrest, the officer shall inform the defendant of the offense charged and of the fact that the warrant has been issued." *R.* 3:3–3(c). It was reasonable in the circumstances of this case to dispense with the requirement that the police inform the defendant of the offense charged. In other circumstances a forcible entry to execute an arrest warrant may not be reasonable.[1] For example, if the police are executing a warrant at a suspect's home, rather than on a fleeing suspect that they by chance happen to see on the street, we expect that the police will present the warrant at a proper hour and will knock and announce their presence at the suspect's door. The main test

---

[1] In *Wilson v. Arkansas, supra,* the Court left it to the lower courts to determine "the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at ——, 115 *S.Ct.* at 1919, 131 *L.Ed.*2d at 984. The New Jersey Supreme Court Criminal Practice Committee should consider whether to recommend any revision in the Rules of Criminal Practice. *See, e.g., Rule* 3:3–1(b) (furnishing "Guidance on Issuance" of arrest warrants). *See also* 18 *U.S.C.* § 3109 (authorizing forcible entry to execute search warrants and, by implication, arrest warrants, provided the officer has given prior notice of his or her authority and purpose).

always remains whether the law enforcement officer has acted in an objectively reasonable manner.

Under the totality of the circumstances here, we find that the police officers acted in an objectively reasonable manner under the Fourth Amendment and Article 1, paragraph 7 of the New Jersey Constitution, when they followed Collier, the fleeing object of the warrant, into the apartment.

The judgment of the Appellate Division is reversed, and defendant's conviction is reinstated.

*For reversal and for reinstatement*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, STEIN, COLEMAN and GARIBALDI—7.

*For affirmance*—None.