NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2711-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JONATHAN CRUZ, a/k/a JOMATHAN CRUZ,

 Defendant-Appellant.

________________________________

 Submitted April 25, 2017 – Decided June 19, 2017

 Before Judges Leone and Moynihan.

 On appeal from Superior Court of New Jersey,
 Law Division, Hudson County, Indictment No.
 14-10-1621.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Laura B. Lasota, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Esther Suarez, Hudson County Prosecutor,
 attorney for respondent (Kerry J. Salkin,
 Assistant Prosecutor, on the brief).

PER CURIAM

 Defendant Jonathan Cruz appeals his December 4, 2015 judgment

of conviction. He challenges the trial court's denial of his
motion to suppress the air pellet gun found during a protective

sweep of his home. We affirm.

 I.

 The following facts were found by the trial court. At

approximately 6:00 a.m. on April 22, 2014, law enforcement officers

executed an arrest warrant for defendant at his home in Jersey

City. The arrest warrant stemmed from a complaint alleging

defendant laid a small handgun in front of a woman and threatened

to kill her. Officers knocked at the door and heard male and

female voices behind the door. Approximately one to two minutes

after they knocked, defendant's girlfriend answered the door and

confirmed defendant was in the apartment. However, defendant did

not make himself visible, and the officers did not know where

defendant was. The lights were off and the officers could not see

defendant from the door.

 The officers entered the five-room apartment and split up to

look for defendant. In his search for defendant, Sergeant John

Joy entered the kitchen and opened the cabinet under the kitchen

sink. He found an air pellet gun in plain view. Ten to twenty

seconds later, other officers found defendant in the bathroom and

arrested him. Joy seized the handgun.

 Defendant was charged with unlawful possession of a handgun

in violation of N.J.S.A. 2C:39-5(b); possession of a firearm for

 2 A-2711-15T4
an unlawful purpose in violation of N.J.S.A. 2C:39-4(a); and

terroristic threats in violation of N.J.S.A. 2C:12-3.1

 Defendant moved to suppress the handgun. Sergeant Joy and

defendant testified at the hearing. The trial court also viewed

photos of the kitchen cabinet where Joy found the handgun. The

court found Joy credible and rejected the alternative version of

events proffered by defendant.2 The court specifically credited

Joy's assertion that a person could hide in the cabinet.

 Judge Joseph V. Isabella denied defendant's motion to

suppress in an April 10, 2015 order. The court stated in its

accompanying written opinion that "the protective sweep of

[d]efendant's apartment . . . was not unnecessarily invasive and

only extended to a 'cursory inspection of those spaces where a

person may be found'" (quoting Maryland v. Buie, 494 U.S. 325,

335, 110 S. Ct. 1093, 1099, 108 L. Ed. 2d 276, 287 (1990)).

 Defendant subsequently pled guilty to an amended count

charging fourth-degree aggravated assault with a firearm.

1
 Under the Criminal Code, an air pellet gun can be a "firearm"
and thus a "handgun." N.J.S.A. 2C:39-1(f), (k).
2
 Defendant claimed that the police arrested him, asked him where
the handgun was, and that he revealed it was under the kitchen
sink after they threatened his girlfriend.

 3 A-2711-15T4
N.J.S.A. 2C:12-1(b)(4). The trial court imposed an eighteen-month

sentence and dismissed the remaining charges.

 Defendant appeals, claiming:

 THE OFFICER'S ACT OF OPENING THE CABINET WAS
 NOT JUSTIFIED UNDER THE PROTECTIVE SWEEP
 DOCTRINE AND CONSTITUTED AN ILLEGAL
 WARRANTLESS SEARCH. AS A RESULT, THE PELLET
 GUN FOUND IN THE CABINET MUST BE SUPPRESSED.3

 II.

 We must hew to our standard of review. An appellate court

is "bound to uphold a trial court's factual findings in a motion

to suppress provided those 'findings are "supported by sufficient

credible evidence in the record."'" State v. Watts, 223 N.J. 503,

516 (2015) (quoting State v. Elders, 192 N.J. 224, 243-44 (2007)).

"Deference to those findings is particularly appropriate when the

trial court has the '"opportunity to hear and see the witnesses

and to have the feel of the case, which a reviewing court cannot

enjoy."'" Ibid. (quoting Elders, supra, 192 N.J. at 244).

"Nevertheless, we are not required to accept findings that are

'clearly mistaken' based on our independent review of the record."

Ibid. (quoting Elders, supra, 192 N.J. at 244). "We owe no

deference to a trial . . . court's interpretation of the law, and

3
 Defendant's claim was preserved, despite his guilty plea,
pursuant to Rule 3:5-7(d).

 4 A-2711-15T4
therefore our review of legal matters is de novo." State v.

Hathaway, 222 N.J. 453, 467 (2015).

 III.

 The Fourth Amendment of the United States Constitution and

Article I, Paragraph 7 of the New Jersey Constitution both provide

"[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures,

shall not be violated" and that no warrants shall issue except

upon probable cause. U.S. Const. amend. IV; N.J. Const. art. I,

§ 7. "Our constitutional jurisprudence expresses a clear

preference for government officials to obtain a warrant issued by

a neutral and detached judicial officer before executing a search."

State v. Edmonds, 211 N.J. 117, 129 (2012). Moreover, "physical

entry of the home is the chief evil against which the wording of

the Fourth Amendment is directed." State v. Vargas, 213 N.J. 301,

313 (2013) (quoting United States v. U.S. Dist. Court for the E.

Dist. of Mich., 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed.

2d 752, 764 (1972)).

 A.

 Here, the officers had a valid arrest warrant. "An arrest

warrant 'implicitly carries with it the limited authority to enter

a dwelling' where the suspect lives when there is reason to believe

the suspect is inside." State v. Brown, 205 N.J. 133, 145 (2011)

 5 A-2711-15T4
(quoting Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371,

1388, 63 L. Ed. 2d 639, 661 (1980)); see, e.g., State v. Jones,

143 N.J. 4, 15 (1995). It is undisputed the officers lawfully

entered defendant's residence because they had an arrest warrant

enabling them to enter and search for him.

 "[T]he scope of a lawful search is 'defined by the object of

the search and the places in which there is probable cause to

believe that it may be found.'" State v. Marshall, 199 N.J. 602,

611 (2009) (quoting Maryland v. Garrison, 480 U.S. 79, 84, 107 S.

Ct. 1013, 1016, 94 L. Ed. 2d 72, 80-81 (1987)). Thus, "until the

point of [the defendant]'s arrest the police had the right, based

on the authority of the arrest warrant, to search anywhere in the

house that [he] might have been found." Buie, supra, 494 U.S. at

330, 110 S. Ct. at 1096, 108 L. Ed. 2d at 283.

 Here, the trial court found that Sergeant Joy "only looked

in places in the kitchen where it was possible that a person could

be found." The court also determined defendant was not found

until "moments after" Joy opened the cabinet beneath the kitchen

sink and saw the handgun. Thus, the search was authorized by the

arrest warrant. Id. at 332-33, 110 S. Ct. at 1097, 108 L. Ed. 2d

at 285.

 Defendant argues the police could not reasonably expect to

find a person hiding in the cabinet under the kitchen sink. The

 6 A-2711-15T4
trial court believed Sergeant Joy's testimony that he had twice

before found people hiding in similar cabinets under kitchen sinks

and that the two-foot-high, three-foot-wide cabinet was large

enough for defendant to fit inside. The court reached the same

conclusion after viewing photos of the cabinet. We cannot say the

trial court was clearly mistaken. Accordingly, Joy was permitted

to open the cabinet in search of defendant pursuant to the arrest

warrant.

 B.

 The trial court found opening the cabinet was also permissible

as part of a protective sweep. "[A] 'protective sweep' is a quick

and limited search of premises, incident to an arrest and conducted

to protect the safety of police officers or others. It is narrowly

confined to a cursory visual inspection of those places in which

a person might be hiding." State v. Davila, 203 N.J. 97, 102

(2010) (quoting Buie, supra, 494 U.S. at 327, 110 S. Ct. at 1094,

108 L. Ed. 2d at 281).

 "[A] protective sweep incident to an in-home arrest is

permissible under the following circumstances." State v. Cope,

224 N.J. 530, 548 (2016). "First, the police may sweep the 'spaces

immediately adjoining the place of arrest from which an attack'

might be launched even in the absence of probable cause or

reasonable suspicion." Ibid. (quoting Buie, supra, 494 U.S. at

 7 A-2711-15T4
334, 110 S. Ct. at 1098, 108 L. Ed. 2d at 286). "The officers may

'look in closets and other spaces'" in that area. Id. at 547

(quoting Buie, supra, 494 U.S. at 334, 110 S. Ct. at 1098, 108 L.

Ed. 2d at 286). "Any wider sweep must be justified by 'specific

facts that would cause a reasonable officer to believe there is

an individual within the premises who poses a danger' to the

arresting officers." Id. at 548 (quoting Davila, supra, 203 N.J.

at 115).

 "Second, the sweep must be 'narrowly confined to a cursory

visual inspection of those places in which a person might be

hiding.'" Ibid. (quoting Buie, supra, 494 U.S. at 327, 110 S. Ct.

at 1094, 108 L. Ed. 2d at 281). Third, "the sweep should last 'no

longer than is necessary to dispel the reasonable suspicion of

danger' or 'to complete the arrest and depart the premises.'"

Ibid. (quoting Davila, supra, 203 N.J. at 115).

 Here, as in Cope, "[t]he police executed the arrest warrant

for defendant while he was present in his apartment." Ibid. The

trial court also found the officers' sweep lasted only about one

minute and merely involved "a cursory visual inspection of those

places in which a person might be hiding." Buie, supra, 494 U.S.

at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d at 281.

 Unlike Buie and Cope, the officers here conducted the

protective sweep immediately before the arrest. Our Supreme Court

 8 A-2711-15T4
has held "a protective sweep conducted on private property is not

per se invalid merely because it does not occur incident to an

arrest." Davila, supra, 203 N.J. at 120. That Buie approved

protective sweeps "incident to an arrest does not appear

significant to its reasoning, except, of course, that the arrest

demonstrated lawful police presence in the home and enhanced the

perceptible danger to the officers on the scene." Id. at 117.

Davila extended Buie "to officers who are lawfully present in

private premises for some purpose other than to effect an arrest."

Id. at 116, 125. To make up for "the absence of probable cause

to arrest" in such circumstances, the Court formulated slightly

different requirements, namely a showing that "(1) law enforcement

officers are lawfully within the private premises for a legitimate

purpose, which may include consent to enter; and (2) the officers

on the scene have a reasonable articulable suspicion that the area

to be swept harbors an individual posing a danger." Id. at 121,

125.

 Here, the distinction between sweeping immediately before and

after the arrest was inconsequential, because the sweep met the

conditions set in Davila as well as Buie. The officers were

lawfully within the apartment pursuant to the arrest warrant.

Moreover, the apartment was small enough that the kitchen was

immediately adjoining the place of defendant's impending arrest.

 9 A-2711-15T4
See Cope, supra, 224 N.J. at 548-49 (permitting the sweep of a

back porch after the defendant was arrested in the living room).

"[A] protective sweep incident to an in-home arrest [does not]

require[] reasonable suspicion even when the sweep is of 'spaces

immediately adjoining the place of arrest.'" Id. at 550-51 (citing

Davila, supra, 203 N.J. at 114).

 In any event, Sergeant Joy had "'articulable facts' and

'rational inferences' drawn from those facts that 'would warrant

a reasonably prudent officer in believing that the area to be

swept harbor[ed] an individual posing a danger to those on the

arrest scene.'" Id. at 547 (quoting Buie, supra, 494 U.S. at 334,

110 S. Ct. at 1098, 108 L. Ed. 2d at 286). As in Cope, "the noise

coming from the apartment," here the male and female voices, gave

the officers reason to "believe[] 'multiple people [were] inside

the apartment.'" Id. at 548 (second alteration in original).4 "No

one in the apartment responded immediately to the officers' door

knocks," and the one to two minute delay gave people time to hide

in places from which attacks could be launched. Ibid.

 Given that only the girlfriend came to the door, the officers

had additional reason to believe defendant was concealing himself.

4
 Defendant argues that in Cope the officers also heard a
"'commotion.'" Cope, supra, 224 N.J. at 548. Nothing in Cope
indicates that is a prerequisite to a protective sweep.

 10 A-2711-15T4
They also knew defendant was wanted for a crime of threatening

someone with a firearm. Thus, the trial court properly found the

officers had a reasonable suspicion the unlocated defendant might

pose a danger. This was an additional danger not present in Cope

where the defendant had already been "handcuffed and placed under

arrest" before the sweep. Id. at 538.

 Moreover, Sergeant Joy had previously found people hiding in

cabinets under kitchen sinks. That articulated fact, together

with the other facts related above, gave rise to a rational

inference that defendant could hide under the sink and pose a

threat to the officers. Accordingly, it was permissible to conduct

a protective sweep and to open the cabinet.

 C.

 Under either of these scenarios, the officers were legally

permitted to open the cabinet under the kitchen sink. When

Sergeant Joy did so, the handgun within was in plain view.

"Although [a protective] sweep 'is not a search for weapons or

contraband,' such items may be seized if observed 'in plain view'

during the sweep." Id. at 548. Here, "the police officers had

the right to be where they were — in defendant's house effectuating

a valid arrest warrant — and to seize any evidence of crime that

was within their plain view." State v. Bruzzese, 94 N.J. 210, 242

 11 A-2711-15T4
(1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed.

2d 695 (1984).

 Under the doctrine of plain view, a warrantless seizure by

the police is justified when:

 (1) the officer was "lawfully in the viewing
 area," (2) the officer discovered the evidence
 "'inadvertently,' meaning that he did not know
 in advance where the evidence was located nor
 intend beforehand to seize it," and (3) it was
 "immediately apparent" that the items "were
 evidence of a crime, contraband, or otherwise
 subject to seizure."

 [State v. Earls, 214 N.J. 564, 592 (2013)
 (citation omitted).]5

 Sergeant Joy was lawfully in a position to view the handgun

in the cabinet under the kitchen sink because he was both executing

the arrest warrant and conducting a protective sweep. Joy

discovered the gun inadvertently because he was searching for

defendant, not a handgun, and had no knowledge before the search

of what the cabinet contained, whether a handgun was in the

apartment, or where it might have been located. See Gonzales,

supra, 227 N.J. at 103. Finally, it was immediately apparent the

handgun was evidence of a crime or contraband. "[E]vidence of a

crime is 'immediately apparent' under the plain-view doctrine when

5
 While our Supreme Court prospectively removed the inadvertence
requirement in State v. Gonzales, 227 N.J. 77, 101 (2016), the
present appeal arises from a judgment that predates Gonzales, so
we apply the previous three-part test.

 12 A-2711-15T4
the officer possesses 'probable cause to associate the property

with criminal activity.'" Id. at 93 (quoting Texas v. Brown, 460

U.S. 730, 741-42, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502, 513

(1983)). The arrest warrant gave the officers probable cause to

believe defendant used a handgun to threaten a woman. Thus, they

could seize the handgun.

 Affirmed.

 13 A-2711-15T4