42 A.3d 222 (2012)
425 N.J. Super. 546
STATE of New Jersey, Plaintiff-Appellant,
v.
James CRAFT, Defendant-Respondent.
Docket No. A-5022-10T2
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2011.
Decided May 14, 2012.
*223 Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Ms. Rosenkrans, on the brief).
Joshua D. Sanders, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Sanders, of counsel and on the brief).
Before Judges FUENTES, GRAVES, and KOBLITZ.
The opinion of the court was delivered by
GRAVES, J.A.D.
Defendant James Craft was charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree receiving stolen property, a nine-millimeter handgun, N.J.S.A. 2C:20-7; and seconddegree unlawful possession of the handgun, N.J.S.A. 2C:39-5(b). After the trial court granted defendant's motion to suppress the cocaine and the handgun, we granted the State's motion for leave to appeal and now reverse. We conclude there was no violation of defendant's constitutional rights under the Fourth Amendment or Article I, Paragraph 7, of the New Jersey Constitution.
Two witnesses testified at the suppression hearing. The State presented testimony from Newark Detective Dennis Daniels, a fifteen-year veteran of the department. In addition, Jacqueline Craft, defendant's mother, testified for the defense.
Daniels testified he was assigned to the Fugitive Apprehension Team (Team) when it received a warrant for defendant's arrest.[1] The Team also received information from its intelligence officer that defendant *224 was residing with family members in a second-floor apartment of a three-family house at a specific address on South 13th Street in the City of Newark. Daniels testified he was familiar with the location, and he knew that the Craft family resided at the address because he had "made arrests there before."
Daniels explained that the intelligence officer analyzes "certain information that we get and he gives us the addresses where we need to go, so we don't have to run around the City looking for people that don't live at ... certain addresses anymore." Daniels also testified that the Team "went out on the case immediately because it was a shooting warrant."
At approximately 8:00 a.m. on November 10, 2009, Daniels and several other members of the Team went to the address provided by the intelligence officer to execute the arrest warrant. The officers were wearing civilian clothes, but Daniels "had [his] badge around [his] neck." Daniels testified the front door to the three-family residence was "wide open," and he proceeded to the second floor with three other officers. Other members of the team were stationed outside the house.
Daniels said he knocked on the secondfloor apartment door, and Ms. Craft opened the door. After identifying himself, Daniels asked whether the officers could enter the apartment to speak with Ms. Craft regarding her son. According to Daniels, Ms. Craft consented to the officers' entry into her apartment.
Upon entering the apartment, Daniels advised Ms. Craft that her son was wanted for "a shooting," and they had a warrant for his arrest. Daniels testified that Ms. Craft said her son "wasn't there," but she offered to call him on the phone. When Ms. Craft made the call, a cell phone in a bedroom began ringing. Daniels believed that defendant's phone was ringing and that defendant would probably "be by [his] phone." Therefore, Daniels "immediately went to the room," opened the door, and observed defendant "going out the window."
Daniels testified that defendant dropped a black handgun on the floor as he was climbing out the window. The police recovered the handgun and five vials of cocaine from the bedroom. The cocaine was in plain view on top of a dresser. After a brief chase, defendant was apprehended by other members of the Team.
Ms. Craft, on the other hand, testified that the police did not knock on her door. According to Ms. Craft, "the door just opened" and "eight or nine cops" walked into the apartment and "started questioning me about my son." Ms. Craft testified she did not know that her son was in the apartment, and she told the police he was living with one of her daughters in Irvington. Ms. Craft also stated that she did not telephone her son.
After reviewing the conflicting testimony, the trial court found "Ms. Craft was less credible than Detective Daniels." Consequently, the court concluded the police had Ms. Craft's consent to enter the apartment. The court also found that Ms. Craft "offered to call her son" and, "[w]hen she did so, the police heard a cell phone ring in the next room." Nevertheless, the court determined that the officers' entry into the bedroom was unlawful because "the coincidence of a phone ringing" after Ms. Craft telephoned her son was insufficient to justify the entry into the bedroom without a search warrant. Citing to State v. Miller, 342 N.J.Super. 474, 479, 777 A.2d 348 (App.Div.2001), the court found the police did not have an "objectively reasonable belief" that "defendant both resided at and would be found at" his mother's apartment.
*225 On appeal, the State contends that the "intelligence officer's investigation was more than adequate" to establish defendant was residing at his mother's apartment and, in any event, "[d]efendant's mother allowed the police to enter the residence where the police believed the defendant lived." The State also argues it was necessary for the officers to take immediate action after they became aware of defendant's presence in the bedroom "to protect themselves and others in the residence."
When reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are `supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) (quoting State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999)). "A trial court's findings should be disturbed only if they are so clearly mistaken `that the interests of justice demand intervention and correction.'" Id. at 244, 927 A.2d 1250 (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)). However, we are "neither bound by, nor required to defer to," the trial court's legal conclusions. State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010).
We initially note that the police did not need an arrest warrant or a search warrant to approach Ms. Craft's apartment building and knock on the door to her apartment. State v. Brown, 205 N.J. 133, 146, 14 A.3d 26 (2011) (citing State v. Domicz, 188 N.J. 285, 302-03, 907 A.2d 395 (2006)). In addition, we will defer to the trial court's credibility assessments and its determination that the police officers were lawfully inside the apartment because those findings are "supported by sufficient credible evidence in the record." Elders, supra, 192 N.J. at 243, 927 A.2d 1250 (citations and internal quotation marks omitted). Therefore, the primary issue on appeal is whether the police violated defendant's constitutional rights when they entered the bedroom in his mother's apartment without a search warrant.
Under our Federal and State Constitutions, "judicially-authorized search warrants are strongly preferred before law enforcement officers conduct a search, particularly of a home." State v. Johnson, 193 N.J. 528, 552, 940 A.2d 1185 (2008). Accordingly, searches and seizures without a search warrant are presumptively invalid unless the State can "demonstrate that the search is justified by one of the `few specifically established and well-delineated exceptions' to the warrant requirement." State v. Frankel, 179 N.J. 586, 598, 847 A.2d 561 (2004) (quoting Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298-99 (1978)). The exceptions to the warrant requirement take into account that in certain circumstances "a search without a warrant is both reasonable and necessary." Ibid. "For example, our case law permits a warrantless search when incident to a lawful arrest, when consent is given, when government officials act in a communitycaretaking function, and when exigent circumstances compel action." Johnson, supra, 193 N.J. at 552, 940 A.2d 1185.
"The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991). The reasonableness of a warrantless search or seizure is determined "by assessing, on the one hand, the degree to which it intrudes on an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." State v. Davila, 203 N.J. 97, 111, 999 A.2d 1116 (2010) (quoting United States v. Knights, 534 U.S. 112, 118-19, 122 S.Ct. 587, 591, 151 *226 L.Ed.2d 497, 505 (2001)). When determining the validity of a warrantless search or seizure, "[t]he question is not whether the police could have done something different, but whether their actions, when viewed as a whole, were objectively reasonable." State v. Bogan, 200 N.J. 61, 81, 975 A.2d 377 (2009) (citing State v. Diloreto, 180 N.J. 264, 278, 850 A.2d 1226 (2004)); see also State v. Jones, 143 N.J. 4, 19-20, 667 A.2d 1043 (1995) ("The main test always remains whether the law enforcement officer has acted in an objectively reasonable manner.").
In Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court held that absent consent or exigent circumstances, the police must obtain a search warrant to search for the subject of an arrest warrant in the home of a third party. Steagald, supra, 451 U.S. at 216, 101 S.Ct. at 1649-50, 68 L.Ed.2d at 48. In that case, after receiving information that a suspect was staying in a third-party's house, drug enforcement agents forced their way into the thirdparty's home without a search warrant. The Court found the search was unreasonable, and the drugs seized during the search were suppressed.
This court addressed a similar situation in State v. Miller, 342 N.J.Super. 474, 777 A.2d 348 (App.Div.2001). In Miller, the law enforcement officers went to a thirty-party's home to execute a parole warrant for the defendant's arrest. When the officers knocked on the front door, the third party told them the defendant was not there. However, the officers used threats to gain entry, searched the residence, found the defendant, and arrested him. In those circumstances, we affirmed the trial court's decision to suppress the marijuana found at the scene because the parole officers did not have a reasonable basis for believing the defendant lived at the residence, and "the officers were using the arrest warrant as a surrogate for a search warrant," which was impermissible under Steagald. Id. at 500, 777 A.2d 348.
In this case, unlike in Miller, Detective Daniels knew the Craft family resided at the address provided by the intelligence officer and, as the motion judge found, "Ms. Craft allowed [the police officers] to enter her home." Furthermore, both Steagald and Miller recognize that the police may enter a third-party residence without a search warrant to apprehend a suspect when there are sufficient exigent circumstances. See, e.g., State v. Jones, 143 N.J. 4, 19, 667 A.2d 1043 (1995) ("Police officers acting pursuant to a valid arrest warrant have the right to follow a fleeing subject into a private residence."). Therefore, the trial court's reliance on Miller was misplaced.
Whether exigent circumstances justify dispensing with the need for a search warrant must be determined "on a case-by-case basis with the focus on police safety and preservation of evidence." State v. Pena-Flores, 198 N.J. 6, 11, 965 A.2d 114 (2009); see also State v. Dunlap, 185 N.J. 543, 551, 888 A.2d 1278 (2006) ("Police safety and the preservation of evidence remain the preeminent determinations of exigency."). "In each case it is the circumstances facing the officers that tell the tale." Pena-Flores, supra, 198 N.J. at 29, 965 A.2d 114. While there is "no magic formula," a court must consider the totality of the circumstances to determine whether it was "impracticable to secure a warrant" prior to the search. Id. at 28-29, 965 A.2d 114; see also Johnson, supra, 193 N.J. at 553, 940 A.2d 1185 (noting that exigency will be found "when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger").
*227 In this case, we conclude there was no constitutional violation by the police, and it was error to suppress the items that were seized. The arrest warrant provided probable cause for defendant's arrest; the officers entered the apartment with Ms. Craft's consent; and Detective Daniels had reason to believe defendant was present in an adjoining room when a cell phone began ringing after Ms. Craft called her son. In addition, the officers knew the arrest warrant was for "a shooting" and, therefore, defendant was potentially dangerous. Under these circumstances, there was a compelling need for immediate action to apprehend defendant, and it was impracticable for the officers to obtain a search warrant. Thus, their entry into the bedroom was objectively reasonable, and the items seized were in plain view.
Reversed.
NOTES
[1] Defendant does not challenge the validity of the warrant for his arrest.