**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2312-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ADAM J. COLEY, a/k/a
A-HIGH,

     Defendant-Appellant.

_____

Submitted March 16, 2020 – Decided April 7, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 17-12-0423.

Joseph E. Krakora, Public Defender, attorney for appellant (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

James L. Pfeiffer, Acting Warren County Prosecutor, attorney for respondent (Dit Mosco, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Adam J. Coley, appeals from his convictions for second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); and second-degree possession of a weapon by a certain person, N.J.S.A. 2C:39-7(b)(1). Defendant pleaded guilty to the offenses pursuant to a plea agreement. On appeal, he challenges the court's denial of his motion to suppress the controlled dangerous substances, weapon, and other physical evidence seized following execution of a warrant for his arrest in his niece's home. He argues the police officers unlawfully entered the home in which he lived with his niece to execute the arrest warrant, and the evidence discovered and seized thereafter should have been suppressed as fruit of the poisonous tree. We disagree and affirm.

I.

The facts pertinent to the search and seizure of the evidence are not disputed. During the suppression hearing, it was established that at a March 31, 2017 morning briefing for the Phillipsburg police department, Officer Kevin Cyphers learned there was an outstanding warrant from Easton, Pennsylvania for defendant's arrest. Officer Cyphers was also informed defendant operated a

white Jeep Cherokee; had a residence on Randall Street in Phillipsburg; and was possibly in possession of a weapon.

While on patrol later that day, Officer Cyphers saw a white Jeep Cherokee parked near the Randall Street address. He checked the vehicle's registration information and learned defendant was one of its registered owners. Officer Cyphers called for backup, and Officers William Lance and Christopher Mecca responded. The three officers approached the Randall Street address.

As the officers approached the residence, Officer Cyphers saw a woman exiting a vehicle in the rear of the house. He and Officer Mecca approached the woman, who was later identified as defendant's niece, and asked if she lived in the house. Defendant's niece said she lived in the house, and, in response to the officers' questions, said defendant "stays [t]here with . . . me" and he was in the house. During the suppression hearing, defendant testified that on the day of his arrest, he lived at a "couple of places," and his niece's Randall Street home was one of them. Officer Cyphers testified defendant's niece consented to the officers' entry into her house to speak with defendant, unlocked the rear door, and allowed the officers to enter.

Officers Cyphers and Mecca entered the home and announced their presence by stating, "Phillipsburg Police." They let Officer Lance into the house

A-2312-18T4

through the front door, and the officers searched the basement and various floors of the house for defendant. They opened the door to the attic, saw a light on, went up the stairs, and found defendant. In response to Officer Lance's inquiry, defendant identified himself as "Adam Coley."

Defendant was arrested, placed in handcuffs, and advised of his Miranda rights.[1] Defendant was searched following his arrest, and the officers found $877 in his pocket. In the attic, the officers saw a stun gun on a cabinet, various suspected controlled dangerous substances, and materials commonly used to package controlled dangerous substances.

A detective arrived and questioned defendant. Defendant said the drugs in the attic were his and pointed to a corner in the attic where he said a gun was located. In the area identified by defendant, Officer Cyphers observed the end of a gun magazine with a bullet jutting from behind a board near the ceiling. Defendant denied the gun belonged to him; he said he was holding it for a friend.

The officers escorted defendant from the attic to the police station. They obtained a telephonic search warrant. Their subsequent search of the home resulted in the seizure of a stolen handgun, nineteen bags of marijuana, 100 bags

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2312-18T4

of heroin, sixteen grams of cocaine, eleven Xanax pills, and six Clonazepam pills.

In a written opinion following the presentation of evidence at the suppression hearing, the judge found in pertinent part that the police had an active warrant for defendant's arrest. The court determined defendant's niece lived at the Randall Street home; said defendant was "staying there"; and not only verbally gave the officers consent to enter the home to look for defendant, but also unlocked the door to let them in. The court also found defendant's niece did not limit the officers' access within the home.

The court further determined that after they found defendant in the attic, the officers observed controlled dangerous substances and a stun gun in plain view. The court concluded the officers properly obtained defendant's statements concerning his ownership of the drugs and the location of the hidden gun after advising defendant of his Miranda rights. The court found the officers obtained a valid search warrant, and the search and seizure of evidence was lawful.

The court entered an order denying defendant's motion to suppress physical evidence and his statements to the police. As noted, defendant subsequently pleaded guilty to two drug offenses and a weapons offense

pursuant to a plea agreement. Following the imposition of sentence and entry of the judgment of conviction, defendant appealed.

Defendant presents the following argument for our consideration:

POINT I

BECAUSE THE POLICE IMPROPERLY ENTERED A THIRD-PARTY'S HOUSE TO EXECUTE THE ARREST WARRANT AGAINST [DEFENDANT], THE EVIDENCE SEIZED IS THE FRUIT OF THE POISONOUS TREE AND MUST BE SUPPRESSED.

II.

When reviewing a motion to suppress evidence, we accept the factual findings made by the trial court "provided those factual findings are 'supported by sufficient credible evidence in the record.'" State v. Smith, 212 N.J. 365, 387 (2012) (quoting State v. Handy, 206 N.J. 39, 44, (2011)). "In considering the legal conclusions to be drawn from those facts, our review is de novo." Ibid. (citing Handy, 206 N.J. at 45).

Defendant's challenge to the denial of his suppression motion is centered on his claim the officers' entry into the Randall Street home was "unnecessary and unlawful," and that the "sweep of the entire house exceeded the scope of [defendant's] niece's consent." Defendant argues the searches and seizures that followed the alleged unlawful entry—including the observations of evidence in

A-2312-18T4

the officers' plain view and the search pursuant to the telephonic search warrant—constitute the fruit of the poisonous tree and should have been suppressed. See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

"[U]nder . . . the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Elders, 192 N.J. 224, 246 (2007). Searches and seizures conducted without a warrant, "particularly in a home, are presumptively unreasonable." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 585 (1989)). Indeed, entry into the home is the "chief evil against which the wording of the Fourth Amendment is directed." State v. Lamb, 218 N.J. 300, 314 (2014) (citation and internal quotation marks omitted). Therefore, "our jurisprudence expresses a clear preference for police officers to secure a warrant before entering and searching a home." State v. Brown, 216 N.J. 508, 527 (2014). Where a search of a home is challenged, the State has the burden of proving by a preponderance of the evidence the search is "justified by one of the 'well-delineated exceptions' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

Defendant argues the officers' entry into the home is unconstitutional under Steagald v. United States, 451 U.S. 204 (1981). In Steagald, the Supreme Court considered "the narrow issue . . . [of] whether an arrest warrant – as opposed to a search warrant – is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." Id. at 212 (emphasis added). Indeed, in Steagald, the Supreme Court addressed the Fourth Amendment rights of a third-party owner of property and not the rights of an individual, like defendant here, who is the subject of an arrest warrant and who is living in the third-party's home. Ibid. The Supreme Court explained the issue it decided was "not whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search." Id. at 219.

This distinction was recognized in State v. Miller, where we observed that whether evidence seized during a search "conducted upon execution of a . . . warrant for [a] defendant's arrest, but without a search warrant," and "in a third-party's home" should be suppressed is "a factual situation one step removed from Steagald[.]" 342 N.J. Super. 474, 477, 489 (App. Div. 2001).

Thus, defendant's reliance on Steagald is misplaced; its holding is inapposite to the circumstances presented.

"Absent exigent circumstances or consent, the police must obtain a warrant to conduct an arrest inside a home." State v. Brown, 205 N.J. 133, 145 (2011). Although "an arrest warrant generally furnishes no authority to the police to intrude on the privacy of a home or to engage in a search therein," Miller, 342 N.J. Super. at 490, "[a]n arrest warrant 'implicitly carries with it the limited authority to enter a dwelling' where the suspect lives when there is reason to believe the suspect is inside," Brown, 205 N.J. at 145 (quoting Payton v. New York, 445 U.S. 573, 603 (1980)). In State v. Jones, our Supreme Court held police "have the right to execute an arrest warrant on a defendant at his or her home, and they may enter the home to search for the defendant when there is probable cause to believe that he or she is there." 143 N.J. 4, 13 (1995). However, "absent special circumstances, a police officer cannot search for the subject of an arrest warrant in a home where the subject is merely a visitor without first obtaining a search warrant." State v. Cleveland, 371 N.J. Super. 286, 294 (App. Div. 2004).

"[I]n the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively

reasonable bases for believing that the person named in the warrant both resides in the dwelling and is within the dwelling at the time." Id. at 299 (quoting Miller, 342 N.J. Super. at 479). In Miller, we affirmed a suppression order because the officers "did nothing to confirm independently the snippet of opinion they had received" that the target was living with a woman who credibly denied he lived there. 342 N.J. Super. at 500; cf. State v. Craft, 425 N.J. Super. 546, 554 (App. Div. 2012) (finding "the trial court's reliance on Miller was misplaced" because a detective "knew the [target's] family resided at the address provided by [a police] intelligence officer").

Here, the motion court found the officers' entry into the home, armed with only an arrest warrant, was constitutional because defendant's niece, who lived at the residence, gave her consent for the entry and search. The evidence does not support the court's finding.

Although a resident of property may vitiate the warrant requirement by consenting to a search by the police, State v. Domicz, 188 N.J. 285, 305 (2006), an "essential element" of such consent to conduct a warrantless search is the individual's "knowledge of the right to refuse [it]," State v. Johnson, 68 N.J. 349, 353-54 (1975). Where, as here, the purported consent was given in a noncustodial setting, the State was not required to establish the officers

A-2312-18T4

expressly advised defendant's niece of her right to refuse consent, but the burden remained on the State to demonstrate she knew she had the right to refuse consent. Id. at 354. "[C]onsent to a warrantless search . . . must be shown to be unequivocal, voluntary, knowing, and intelligent," State v. Sugar, 108 N.J. 151, 156 (1987), based on the totality of the circumstances, State v. Koedatich, 112 N.J. 225, 264 (1988).

The record is bereft of any evidence the officers advised defendant's niece she had a right to refuse consent to their entry into her home. The State also failed to present any evidence she otherwise knew she had the right to refuse consent. The evidence showed only the officers asked defendant's niece if they could enter her house, and, in response, she said they could. Lacking evidence defendant's niece knew she had the right to refuse consent, the court erred by finding defendant's niece knowingly gave the consent required to allow the officers' entry into her house without a search warrant.[2] See Johnson, 68 N.J. at 353-54.

_____

[2] Our determination the defendant's niece did not provide valid consent to enter the house renders it unnecessary that we address defendant's claim the officers exceeded the scope of her consent. We also note there is no evidence establishing an exigency permitting the officers entry into the Randall Street home, and the State does not claim an exigency supported entry into the home.

The court's error does not, however, require reversal of its suppression order. As noted, an arrest warrant allows lawful entry into a home, even in the absence of consent or exigency, where the officers have objectively reasonable bases to believe the subject of the arrest warrant resides in the home and is within the home at the time. See Brown, 205 N.J. at 145; Jones, 143 N.J. at 13; Cleveland, 371 N.J. Super. at 299. The totality of the circumstances presented to Officers Cyphers and Mecca supported an objectively reasonable basis to believe defendant—the subject of the arrest warrant—both resided at the Randall Street home and was in the home when the officers entered.

More particularly, the briefing the officers received included information that defendant might be found at the Randall Street address. In addition, Officer Cyphers found a vehicle registered to defendant in close proximity to the house; and defendant's niece was present on the property, said she lived at the house, and said defendant lived there as well. Defendant's niece provided further confirmation she resided at the house; she possessed the key and used it to unlock the rear door. She also stated directly defendant was in the house at the time the police officers gained access.

In our view, the totality of those circumstances support an objectively reasonable belief defendant resided at the house and was in the house when the

12

officers entered. Therefore, the arrest warrant provided constitutionally-compliant authorization for the officers' entry into the home, and the physical evidence seized as a result of the subsequent plain-view observations and search conducted pursuant to the search warrant did not constitute fruit of a poisonous tree. Cf. Miller, 342 N.J. Super. at 500 (finding an invalid entry into a home based on an arrest warrant "tainted . . . the evidence seized as a result of the unlawful entry"); but see State v. Bell, 388 N.J. Super. 629, 631 (App. Div. 2006) (finding unlawful entry into a home to execute a valid arrest warrant does not require suppression of statements made by the arrested subject of the warrant). We therefore affirm the court's order denying defendant's suppression motion.

Defendant's remaining arguments, including his claim the officers' observations of the drugs, paraphernalia, and stun gun did not fall within the plain-view exception to the warrant requirement, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We note only defendant's claim the plain-view exception did not apply to the officers' observations of the drugs, paraphernalia, and stun gun in the attic is based on the false factual premise the officers were not lawfully in the attic when the observations were made. See State v. Gonzales, 227 N.J. 77, 101 (2016) (finding

the plain-view exception applies where the officer is "lawfully . . . in the area where he [or she] observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime"). As we have determined, the officers were lawfully in the attic when they observed the drugs and associated paraphernalia, and the evidence otherwise establishes it was immediately apparent to the officers that what they observed constituted evidence of a crime.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2312-18T4